UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

    Plaintiff,

v.

Jermaine Corwin Rogers,

    Defendant.

Criminal No. 07-397 (DSD/JJG)

**REPORT AND RECOMMENDATION**

---

The above-entitled matter came before the undersigned on December 4, 2007, for resolution of pretrial motions. Lisa D. Kirkpatrick, Assistant United States Attorney, appeared for the Government. Manvir K. Atwal, Assistant Federal Defender, appeared for Jermaine Corwin Rogers ("Rogers"). The parties were given additional time to submit briefing regarding Mr. Roger's motion to suppress evidence, which has been completed and considered by the Court.

Before the Court are Rogers' motions to suppress evidence (Doc. No. 11) and statements, admissions, and answers (Doc. No. 12). For the reasons set forth below, the Court recommends denial of Rogers' motions.

**I.     BACKGROUND**

On June 29, 2007, Officers Molly Fischer and Troy Dillard of the Minneapolis Police Department were on-duty together responding to 911 calls in north Minneapolis. *Transcript of December 4, 2007, Criminal Motions Hearing* ("Tr."), pp. 5-7. Shortly after midnight on that day, between 12:15 and 12:30 a.m., they received a 911 dispatch call that two black males in a white SUV were chasing two women with a chainsaw near 39th Avenue and Upton Avenue North in Minneapolis. Tr. at 7, 29. The dispatch call

indicated that the suspects were 17 years old and that the caller reporting the incident "thinks it was a prank." *Id.* The dispatch call was made approximately 30 minutes after the alleged chainsaw incident. *Id.* at 29.

Fischer and Dillard immediately responded to the call, arriving at the area where the alleged incident occurred within five minutes of the dispatch. Tr. at. 9. They circled the area around 39th Avenue and Upton, and observed a white Chevy Tahoe SUV driving at 39th Avenue and Thomas, within one block from the site of the reported incident. *Id.*

The officers then observed the Tahoe run a stop sign on 39th Avenue and Thomas. Tr. at 9, 45. They followed the Tahoe, which turned right, then left, and then abruptly parked on Russell. *Id.* at 10. The officers testified that the turns and abrupt park appeared to them to be evasive. *Id.* at 10, 46.

Two black males exited the Tahoe immediately after it was parked on Russell, without locking the doors. They walked quickly away from the vehicle. *Id.* at 12.

Fischer and Dillard activated their squad's lights, parked behind the Tahoe, and exited their squad. Fischer very loudly asked the two individuals who had exited the Tahoe to stop. *Id.* at 15. They did not do so. *Id.* Fischer again asked them to stop, and tried to catch up with one of them, the Tahoe's passenger, Defendant Rogers. *Id.* Rogers stopped walking at that point. *Id.*

Fischer asked Rogers where he was coming from. He responded that he was coming from "off of 40th." *Id.* at 16. Rogers stated that he lived a few houses down from where they were standing and took a couple of steps away from Fischer. *Id.* at 17. Fischer asked Rogers to get back in the vehicle. *Id.* at 33, 38. He did not do so. *Id.* Fischer pat searched Rogers and placed him in the back of the squad car. *Id.*

2

Dillard caught up with the Tahoe's driver, Mr. Bailey. *Id.* at 48. He pat searched him and asked him what was going on. *Id.* Bailey did not respond. *Id.* Dillard placed Bailey in the back of the squad. *Id.*

Fischer ran identification checks on Rogers and Bailey. She determined that both had suspended driver's licenses. *Id.* at 17-18. She also ran a check on the Tahoe, which came back registered to a female in Cannon Falls, Minnesota. She asked Rogers and Bailey who owned the vehicle. Both responded that they did not know. *Id.* at 18.

While Fischer was running checks in the squad with Rogers and Bailey, Dillard searched the Tahoe for evidence of a weapon used in the reported chainsaw incident. *Id.* at 49-50. He found a gun after removing the ashtray compartment located in the center console. *Id.* at 60. After the gun was found, Rogers and Bailey were arrested and handcuffed.

The officers determined that the vehicle would have to be towed and impounded, as neither Bailey nor Rogers owned it. *Id.* at 22. They conducted an inventory search of the vehicle incident to towing and impounding it. *Id.* at 19.

## II. ANALYSIS

Rogers moves to suppress evidence obtained from the search of the Tahoe and to suppress statements he made during his encounter with Officer Fischer and in the jailhouse. The Court addresses each motion below.

### A. Motion to Suppress Evidence

Rogers contends that the search of the Tahoe violated his Fourth Amendment rights because: 1) the initial stop of the Tahoe was unlawful; and 2) no probable cause existed to search the Tahoe. The

Government responds that Rogers lacks Fourth Amendment standing to contest the search, that the stop of the Tahoe was based on a traffic violation, that the officers had sufficient reason to believe that Rogers was involved in the chainsaw incident to search the Tahoe, and that they would have inevitably searched the Tahoe and discovered the gun.

### 1. Fourth Amendment Standing to Contest Search

The parties agree that Rogers has standing to contest the initial vehicle stop. *See Brendlin v. California*, – U.S. –, 127 S. Ct. 2400, 2407-2408 (2007). The Court, therefore, analyzes Rogers' Fourth Amendment standing only with regard to the vehicle search.

Fourth Amendment rights are personal and cannot be asserted vicariously. *U.S. v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994) (citing *Rakas v. Illinois*, 439 U.S. 128, 138-44 (1978)). Consequently, to establish Fourth Amendment standing, a defendant must show that he had "a legitimate expectation of privacy in the area searched or the item seized." *Gomez*, 16 F.3d at 256 (citations omitted). Factors bearing on this determination include, "ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *Id*. It is the defendant's burden to show the requisite expectation of privacy. *Rakas*, 439 U.S. at 130-131 n.1; *Gomez*, 16 F.3d at 256.

The record before the Court does not establish Rogers' Fourth amendment standing to challenge the vehicle search. Rogers was a passenger in the Tahoe on June 29, 2007. Tr. at 13. When Officer Fischer ran a check on the Tahoe, it came back registered to a female in Cannon Falls, Minnesota. Fischer

asked Rogers if he knew who owned it, and he responded that he did not. Tr. at 18. Rogers has not asserted any possessory interest in the gun found in the vehicle, nor in the console area that was searched. On this record, the Court finds no evidence that Rogers had a ownership or possessory interest in the vehicle conferring Fourth Amendment standing. *Rakas* is clear that a vehicle passenger does not have standing to contest a search of that vehicle where no property or possessory interest in the vehicle, or the item seized, is shown. 439 U.S. at 148.

Rogers now belatedly asserts that he has additional evidence bearing on his Fourth Amendment standing that he did not present at the motions hearing. Specifically, his counsel represents that Rogers can show that his girlfriend owns the Tahoe, he had its keys and permission to use it, and had used it in the past. *Def.'s Memo. in Support of Pre-Trial Motion to Suppress Evidence* (Doc. No. 25), p. 9; *Defendant's Motion to Re-Open Motion Hearing*. Rogers, therefore, asks the Court to re-open the motions hearing to allow him to present this evidence. Rogers explains that the Government did not raise the standing issue until the motions hearing. *Id.* If Rogers' evidence is what his counsel represents it to be, it is fair to say that his Fourth Amendment standing is a closer question. *See U.S. v. Rose*, 731 F.2d 1337, 1343 (8th Cir.), *cert. denied*, 469 U.S. 931 (1984) (affirming determination of passenger's Fourth Amendment standing where passenger had permission to use sister's car, possession of car keys, and had used car in the past).

It is Rogers' burden to show the legitimate expectation of privacy necessary to access the Fourth Amendment. His explanation for his failure to timely make the proper showing is, therefore, not particularly compelling. However, given the importance of the Constitutional concerns at stake, the Court finds it inappropriate to determine Rogers' motion on a ground for which a complete record may be lacking. The Court, therefore, assumes for the sake of argument that Rogers has Fourth Amendment standing to contest

5

the search.

### 2.   Vehicle Stop

Rogers contests the legality of the initial stop of the Tahoe. A traffic stop is supported by probable cause if the officer conducting the stop had an objectively reasonable basis to believe a traffic violation occurred. *Whren v. U.S.*, 517 U.S. 806, 810-812 (1996); *U.S. v. Sanders*, 196 F.3d 910, 914 (8th Cir. 1999). Here, the officers both testified that they observed the Tahoe run a stop sign. Tr. at 9, 45. The officers, therefore, had probable cause to stop the Tahoe for a traffic violation.

### 3.   Vehicle Search

Rogers argues that Officer Dillard lacked probable cause to search the Tahoe for evidence of the chainsaw incident. Police may conduct a warrantless search of a vehicle if probable cause exists to believe it contains evidence of a crime. *U.S. v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007). Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The probable cause determination is a "commonsense, practical question" that is based on the "totality-of-the-circumstances." *Gates*, 462 U.S. at 230.

The Court finds that the totality of the circumstances here did not constitute probable cause justifying a warrantless search of the Tahoe. The evidence linking Rogers or the Tahoe to the crime was simply too attenuated. The 911 call did not provide any detail regarding the make or model of the white SUV or its license plate number. *Cf. U.S. Dukes*, 432 F.3d 910, 912, 913-14 (8th Cir. 2006) (relying on more specific vehicle information, including make, model, and information that it was owned by the defendant, to make probable cause showing). Nor did it provide any detail about the alleged perpetrators,

except for their race. That Rogers was a relatively young, black man in a white SUV in North Minneapolis, was simply not enough to create probable cause to search a car in which he was a passenger.

The Government relies on *Chambers v. Maroney*, 399 U.S. 42, 44, 52 (1970), to argue that probable cause existed here. While that case has similarities to the instant case, there is a critical difference. There, the tip given to police involved a generic description of the car, a compact blue station wagon, but a better description of the suspects, including that one was wearing a green sweater and another a trench coat. *Id.* at 44. When the police stopped a blue station wagon near the scene of the crime within one hour of its occurrence, they saw a man wearing a green sweater and there was trench coat in the car. *Id.* The Court held that the subsequent vehicle search was supported by probable cause based, in part, on the clothing match. Here, there is no such specificity regarding Rogers' physical description tipping the scales in favor of establishing probable cause.[1]

Moreover, although Rogers was in the area of the alleged crime in reasonably close temporal proximity to it (approximately 35 minutes), he lived only a few houses down from the spot where the SUV was parked, a fact he told Officer Fischer when he first spoke with her on the street. She confirmed this when she ran his identification check. Thus, it was at least equally probable that Rogers was in the area because he lived there, rather than because he was he was involved in the crime.

The Court acknowledges that the officers also testified to various evasive actions taken by Bailey and Rogers indicating possible attempts to distance themselves from the police and the SUV. While the

---

[1] The 911 call also indicated that the suspects were 17 years old, but this fact, like the racial description, is more generic than the information the police had in *Chambers*. Additionally, Rogers is 25 and Bailey is 30. Thus, the age information tends to detract from, rather than add to, the probable cause calculation here.

totality of the circumstances create reasonable suspicion that Rogers may have been involved in the chainsaw incident, they did not create a "fair probability" that evidence of the chainsaw incident would be found in the Tahoe.[2]  The search, therefore, lacked probable cause and violated the Fourth Amendment.

### 4. **Inevitable Discovery**

Although Officer Dillard's search of the Tahoe lacked probable cause, the Court finds that the police would have inevitably discovered the gun, making suppression unwarranted.  "For the inevitable discovery doctrine to apply, there must have been a reasonable probability the evidence would have been discovered in the absence of police misconduct, and the police must have been pursing a substantial, alternative line of investigation." *U.S. v. Alvarez-Gonzalez*, 319 F.3d 1070, 1072 (8th Cir. 2003) (citing *U.S. v. Boyd*, 180 F.3d 967, 976 (8th Cir.1999)).

Here, both Rogers and Bailey had suspended driver's licenses. Tr. at 17-18.  Minneapolis Police Department policy provides that an individual driving with a suspended license is typically not booked, but is instead issued a citation.  *See* Policy 7-610.[3]  It further provides, "If the driver is issued a citation and there is no licensed driver present whom the vehicle can be released to, the vehicle shall be towed." *Id.* When towed, police department policy requires an inventory search of the vehicle.  *Motions Hearing*

---

[2]Due to the Court's conclusion that probable cause for the search was lacking, it need not reach the question of whether Officer Dillard exceeded the proper scope of the search by looking in the Tahoe's center console compartments. *See U.S. v. Ross*, 456 U.S. 798, 824 (1982).  The Court notes that while the benefit of hindsight may cast doubt on whether many conventional chainsaws could fit in the console, what Officer Dillard saw was a very large center console.  He testified to his estimation that the console could hold an infant, a Christmas turkey, or a chainsaw.  Tr. at 50-52.  It was reasonable, therefore, for him to conclude that a chainsaw could be hidden there.

[3]The full text of this policy is available at <www.ci.minneapolis.mn.us/mpdpolicy/7-600/7-600.asp>.

*Exhibit List*, Government's Ex. 4, Policy 9-206.

Officer Fischer was pursing a substantial, alternative line of investigation into the validity of Rogers' and Bailey's driver's licenses at the time Officer Dillard was conducting the search of the Tahoe. She discovered that both Bailey and Rogers had suspended driver's licenses. There was, therefore, no licensed driver present to whom the vehicle could be released. Pursuant to police department policy, the Tahoe had to be towed and inventory searched in such circumstances.[4] A reasonable probability exists, therefore, that even if the officers had not searched the Tahoe, the gun would have been found incident to an inventory search of the Tahoe because both Bailey and Rogers had suspended driver's licenses. *See Alvarez-Gonzalez*, 319 F.3d at 1072 (applying inevitable discovery doctrine where suspended driver's license created reasonable probability that defendant's vehicle would have been towed and inventory searched).

### B.   Motion to Suppress Statements, Admissions, and Answers

Rogers also moves to suppress statements he made at the time of and subsequent to his arrest. He did not specifically identify in his motion papers or at the hearing which statements he seeks to suppress or the facts supporting suppression.

### 1.   <u>Jailhouse Statement</u>

At the motions hearing, the Government called Sergeant Burbank of the Minneapolis Police Department who interviewed Rogers on June 29, 2007, after he arrested. Tr. at 69. He testified that Rogers was read his *Miranda* rights prior to making any statement, and acknowledged that he understood

---

[4] While the officers did not issue a citation for driving after suspension, there is a reasonable probability that this would have occurred, as Officer Fischer was actively investigating the suspended licenses before the gun was found. *See Alvarez-Gonzalez*, 319 F.3d at 1072.

those rights. *Id.* at 70. This interview was recorded and introduced into evidence. *Motions Hearing Exhibits*, Government's Ex. 1. It reflects that Rogers knowingly and voluntarily waived his *Miranda* rights. Rogers cites nothing to the contrary. The Court finds, therefore, that the record is devoid of a basis for suppression of the jailhouse statement.

### 2. Other Statements

To the extent Rogers' motion encompasses statements he made to Officer Fischer prior to his arrest, the Court finds he was not in custody, and *Miranda* warnings were not required. Officer Fischer's limited questioning of Rogers was a brief investigatory contact justified by a reasonable suspicion of criminal activity regarding the 911 chainsaw call. *See Terry v. Ohio*, 392 U.S. 1, 19 (1968).

Officer Fischer had reasonable suspicion to detain Rogers based on his presence in the area of the alleged crime in close proximity to the time it occurred, his superficial match to the physical description of the perpetrator, his presence in a vehicle matching the description of the one used in the crime, and the numerous evasive actions she observed once she began following him. *See U.S. v. Juvenile TK*, 134 F.3d 899, 901, 904 (8th Cir. 1998) (evasive driving contributes to reasonable suspicion); *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 686 (8th Cir. 1995) (physical match, vehicle match, and erratic driving contribute to reasonable suspicion); *U.S. v. Wright*, 565 F.2d 486, 489 (8th Cir. 1977), *cert. denied*, 435 U.S. 974 (1978) (physical match to dispatch call description of suspects, combined with temporal and spatial proximity to crime contributes to reasonable suspicion).

When Fischer caught up with Rogers on the street, she asked him where he was coming from. He responded that he was coming from off 40th Avenue, that he lived nearby, and took a few steps away from the officer. Given that he came from the area of the alleged incident and motioned as if to leave, Fischer

decided to check his identification. As she did so, she determined that both Bailey and Rogers had expired licenses and that the Tahoe was registered to a woman. She asked Bailey and Rogers who owned the Tahoe. They responded that they did not know. This very limited questioning was properly tailored to the matter under investigation. Rogers does not present any argument that this exchange exceeded its proper scope or became the functional equivalent of full custodial arrest requiring *Miranda* warnings.[5] The Court therefore, recommends denial of Rogers' motion to the extent it encompasses statements beyond the jailhouse statement.

### III.  CONCLUSION

Assuming Rogers' standing to contest the warrantless search of the Tahoe, the search was not supported by probable cause. It was, however, inevitable that the gun would have been found as part of an inventory search of the Tahoe. Rogers' statements at the jailhouse and prior to his arrest were voluntary. Suppression, either of evidence or statements, is, therefore, unwarranted.

### IV.  RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

    A.    Rogers' motion to suppress evidence (Doc. No. 11) be DENIED.

    B.    Rogers' motion to suppress statements, admissions, and answers (Doc. No. 12) be

---

[5]The Court notes that Rogers was placed in the squad, without handcuffs, while Fisher checked his identification and the Tahoe's registration. Tr. at 17. However, she first asked him to get back in the vehicle for safety reasons. *Id.* at 33, 38. When he would not do so, she placed him in the squad. *Id.* Her decision to briefly place him there while she ran the necessary checks did not render Rogers in custody given the safety concerns at play. *U.S. v. Lego*, 855 F.2d 542, 545 (8th Cir. 1988).

DENIED.

Dated this 21st day of December 2007	s/ *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

  Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **January 9, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district court judge is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.